A. E. HOLLINGSWORTH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54282. Promulgated January 31, 1933.

*J. G. Gamble, Esq.*, for the petitioner.
*W. E. Davis, Esq.*, for the respondent.

### OPINION.

LANSDON: The petitioner has appealed from an income tax deficiency of $14,434.65, which the respondent has asserted for the year 1928. As basis for relief the petitioner alleges in his petition that the respondent committed error in (*a*) adding to his income for the year the sum of $80,768.83, as his share of alleged partnership profits, and (*b*) the sum of $2,777.34, previously deducted in his return, representing a reserve set up.

For a number of years prior to September 4, 1928, the petitioner was associated with Donald J. Metcalf and Elvyn S. Cowgill, in the buying and selling of commercial securities, which business they conducted as a copartnership under the firm name of Metcalf, Cowgill and Company. Some time during the period of March 1 to July 1, 1928, the partnership firm acquired options to purchase a large number of shares of the capital stock of several California water company corporations. On August 8, 1928, the partnership entered into a contract with Davis, Longstaff & Company, a corporation, to sell the securities covered in its option for the sum of $1,403,450, payable in cash and in securities. The terms of the sales contract provided, among other things, as follows:

\* \* \* \* \* \* \*

On or before August 30, 1928, Seller shall deposit all of the stock of Peoples Water Company of Palms in escrow with Merchants National Trust & Savings Bank of Los Angeles, Seventh and Spring Streets Branch, Los Angeles, California, and on or before September 7, 1928, Seller shall deposit in said escrow the remainder of the stocks agreed herein to be sold. The parties shall execute appropriate escrow instructions for the delivery of said stock to Buyer and for the delivery of the money to be deposited in said escrow by Buyer to Seller in accordance with the terms and conditions of this contract.

Payment of the purchase price for said stock shall be made as follows: Buyer will deposit in said escrow on or before August 30, 1928 5% Notes of

American States Public Service Company, maturing April 20, 1929, in the amount of $150,000, and said notes shall be considered as part payment of said purchase price to the extent of $142,500. On or before August 30, 1928, Buyer shall deposit in said escrow the sum of $550,000 in cash, and the balance of said purchase price, to-wit: Seven Hundred Ten Thousand, Nine Hundred Fifty Dollars ($710,950) shall be deposited in said escrow by Buyer on or before September 7, 1928.

Upon the deposit by Buyer in said escrow of the $550,000, as above provided, and upon performance by seller of all the covenants and conditions agreed by Seller to be performed respecting the stock of said Peoples Water Company of Palms, said 500 shares of stock of Peoples Water Company of Palms shall be delivered to Buyer, and said $550,000 shall be delivered to Seller; and upon the deposit in said escrow by Buyer of the final payment, as above set forth, and the performance by Seller of all the covenants and conditions agreed by Seller to be performed respecting Huntington Beach Water Company and Highland Domestic Water Company, all of the remainder of said stock shall be delivered to Buyer and the balance of said purchase price shall be delivered to Seller; provided, however, in the event Buyer should default in the deposit of said final payment in escrow on or before September 7, 1928, then, and in such case, it is agreed that Buyer will return to Seller all of the said 500 shares of capital stock of Peoples Water Company of Palms and Seller will return to Buyer the said $550,000 but the $150,000 of Notes of American States Public Service Company shall be delivered to Seller and retained as liquidated damages for the breach of this contract.

*    *    *    *    *    *    *

On September 4, 1928, the petitioner and his associates organized Metcalf, Cowgill & Co., Inc., a corporation, under a charter issued by the State of Delaware, empowered to acquire and conduct the business theretofore owned and conducted by their partnership. On the same date an offer made in behalf of the partnership was accepted by the board of directors of Metcalf, Cowgill & Co., Inc., proposing a transfer to the corporation of all of the assets of the partnership in exchange for 1,000 shares of its capital stock, to be issued to said partnership or its nominees, and the assumption by the corporation of all of the partnership liabilities. The sale of the securities to Davis, Longstaff & Co., under contract with the partnership, was completed through the escrow agent on September 7, 1928, and the net profits paid to the corporation, which reported and paid income taxes upon them for the year 1928. In making out his income tax return for 1928, the petitioner reported no income received from the profits of the sale of the aforesaid securities; and the respondent has held that he is taxable upon so much of the same as represents his ratable interest in the partnership, upon the theory that all of the profits accrued to the partnership prior to its absorption by the corporation.

Considered physically, the partnership owned nothing that was sold to produce the profits in dispute. It owned an option to buy

the securities it later contracted to sell to Davis, Longstaff & Company, but no rights, at least, measured in profits could accrue to it upon the mere signing of that contract. Obviously, the partnership was in no position to make immediate delivery of the securities at the instant the contract was signed. It had yet to buy and assemble them for delivery before it could demand payment of the purchase price; and all this the parties took notice of and provided for in their agreement, through the escrow clause which made the bank their joint agent to receive and hold both assets and their purchase price until all terms of the contract had been complied with. The record shows that the final acts which completed the sale were made through the escrow agent on September 7, 1928, and that the proceeds were paid to the new corporation on that date. Inasmuch as the sale was wholly executory until this closing date, it follows that no profits could or did accrue to the seller until such time. *Aiken* v. *Commissioner*, 35 Fed. (2d) 620. The respondent contends that certain amended instructions given to the escrow agent directing delivery of the avails of the sale of the securities to the new corporation *after the same had been realized* show that it was the intention of the partners not to transfer title to the profits of that transaction until after they were earned. In our opinion the instructions to the agents formed no part in the transactions through which the corporation succeeded to the rights of the partnership it replaced. In the nature of things, these amended instructions followed the change in affairs which made them necessary and in no way affected rights which had become vested through that change. They had to do with the mechanics whereby the new owner of the avails of the sales was to get possession of them without changing the escrow agency, and were adopted in the interests of administration expediency upon the advice of the partners' attorney, who stated that, in his judgment, that form was in line with the better practice. The minutes of the meeting held by the board of directors of Metcalf, Cowgill & Co., Inc., on September 4, 1928, show that the offer from the partnership which the board voted to accept, by specific reference thereto, included the option rights which the partnership held in the securities covered by this sale contract, as well as the contract itself. Through this process the partnership firm passed entirely out of the picture in that business deal on September 4, 1928, when the corporation accepted its offer. That transaction was legal and, although informal in minor respects, sufficient to effect a novation in parties to the contract of sale and in the ownership of the resulting profits. *Iowa Bridge Co.* v. *Commissioner*, 39 Fed. (2d) 777; *Bedell* v. *Commissioner*, 30 Fed. (2d) 622. Judgment on this issue will be in favor of the petitioner.

Respecting the respondent's act in restoring to petitioner's income the sum of $2,777.34, claimed as a reserve deduction, the petitioner has offered no proof to establish his right to such deduction and respondent's determination is affirmed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*